IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DOE,

      Plaintiff,

v.                                        Civ. No. 23-1025 GBW/JFR

SANTA FE PUBLIC SCHOOLS, *et al.*,

      Defendants.

### ORDER GRANTING ANNE LANDAU'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant Anne Landau's Motion to Dismiss Counts XI and XII of the Second Amended Complaint, *doc. 85*, and the parties' accompanying briefing, *docs. 93, 97, 109*.  Having reviewed the briefing and being otherwise fully advised regarding relevant case law, the Court will GRANT the Motion to Dismiss.

### I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff John Doe brings a variety of state and federal claims against Santa Fe Public Schools ("SFPS"), Robert Apodaca, Candice Flint, Robin Chavez, and Anne Landau, as well as the Roman Catholic Church of the Archdiocese of Santa Fe and a number of Catholic parishes (collectively, the "Archdiocese Defendants").  *Doc. 82* at 48 -74.  These claims are based on sexual abuse that Apodaca inflicted on Doe while Doe was a minor child.  *See generally id.*

1

Plaintiff Doe filed the operative Second Amended Complaint for Damages for Violation of Civil Rights, Title IX, and Other Tortious Conduct ("Complaint") on June 4, 2024, *doc. 82*, after the Court dismissed several of Plaintiff's claims against the Archdiocese Defendants on May 15, 2024, *doc. 71*.  Defendant Anne Landau filed the instant Motion to Dismiss ("Motion") on June 10, 2024.  *Doc. 85*.  In the Motion, Defendant Landau requests that the Court dismiss all of Plaintiff's claims against her, including Plaintiff's vicarious liability claim (Count XI) and Plaintiff's premises liability/negligence claim (Count XII).  *See generally id*.  Plaintiff responded to the Motion on July 1, 2024, *doc. 93*, and Defendant Landau replied on July 15, 2024, *doc. 97*.  The Court permitted Plaintiff to file a surreply, *doc. 106*, and Plaintiff did so on August 12, 2024, *doc. 109*.

The factual bases for Plaintiff's vicarious liability and premises liability/negligence claims include the following allegations.  During the summer of 2020, Defendant Robert Apodaca provided compensated house-sitting services for Defendant Anne Landau at a house that Defendant Landau owned in Santa Fe, New Mexico.  *Doc. 82* ¶ 241.  As part of Apodaca's duties as a house-sitter, Defendant Landau authorized Apodaca to spend the night at the house, and she expected Apodaca to "watch[] over and car[e] for, and, at times, provid[e] the appearance of regular occupancy" of her Santa Fe home.  *Id.* ¶ 435.

On one occasion while Apodaca was house-sitting for Defendant Landau,

Apodaca brought Plaintiff, who was then a minor child, to Defendant Landau's home. *Id.* ¶ 244. At the home, Apodaca provided Plaintiff with alcohol that Defendant Landau kept at her home and possibly a narcotic substance. *Id.* ¶¶ 245, 443. Once Plaintiff was intoxicated, Apodaca anally raped Plaintiff. *Id.* ¶¶ 246, 444. Plaintiff also alleges that Apodaca sexually abused at least one other minor child at Defendant Landau's house while Apodaca was providing housesitting services. *Id.* ¶ 247.

## II.   LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement."

*Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'"  *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

### III.   ANALYSIS

#### A.  Vicarious Liability

Defendant Landau first moves to dismiss Plaintiff's vicarious liability claim against her.  For this claim, Plaintiff argues that Apodaca was acting within the scope of his role as an employee of Defendant Landau when he sexually assaulted Plaintiff at Defendant Landau's house.  *Doc. 82* ¶¶ 446-47.  Thus, Defendant Landau is vicariously liable for damages suffered by Plaintiff as a result of the assault.  In her Motion to Dismiss, Defendant Landau first argues that Apodaca was not an agent or employee of Defendant Landau.  *Doc. 85* at 7-9.  Even if the Court were to find that Apodaca was an agent or employee, Defendant Landau argues that sexually assaulting Plaintiff was not

within the scope of Apodaca's duties as Defendant Landau's employee or agent.  *Id.* at 9-14.

As a preliminary matter, the Court finds that Plaintiff has sufficiently alleged that Apodaca was an agent of Defendant Landau for purposes of Defendant's Motion to Dismiss.[1]  In New Mexico, "[a]n agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation."  N.M. R. Civ. UJI 13-401.  In determining the existence of an agency relationship, New Mexico courts utilize the right-to-control test in which they examine the amount of control that a principal exercised over the agent's work or actions.[2]  *Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004); *see also* N.M. R. Civ. UJI 13-402 (a principal is liable for the acts of the agent when "[t]he principal had the right to control the manner in which the details of the work were to be performed at the time of the occurrence, even though the right of control may not have been exercised").  For

---

[1] With respect to both agents and employees, courts determine *respondeat superior* liability using the same scope of employment test.  *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 58 (N.M. 2002) ("[T]he liability of a principal for the tortious act of an agent is the same as the liability of an employer for the tortious act of an employee"; liability for either "is determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee was acting within the scope of employment.").  As a result, the Court need not conduct separate analyses to determine whether Apodaca was an agent *and* an employee of Defendant Landau.

[2] New Mexico courts also traditionally used the right-to-control test to determine the existence of an employer-employee relationship.  *Tercero*, 48 P.3d at 58.  In more recent opinions, however, the right-to-control test in the employer-employee context has been replaced by "a more nuanced approach" which accounts for a variety of factors, "only one of which is the degree of control the [employer] exercises."  *Celaya*, 85 P.3d at 243.  As noted in the previous footnote, the Court need not determine whether Apodaca was an employee of Defendant Landau.

example, in *Madsen v. Scott*, the New Mexico Supreme Court determined that a house

sitter who was asked to "not host wild parties or handle [the homeowner's] guns" was

not an agent of the homeowner because "mere conformity to household rules does not

establish" such a relationship.  992 P.2d 268, 271 (N.M. 1999).  However, in *State Farm*

*Fire & Cas. Co. v. Miller Metal Co.*, the court held that an agency relationship was formed

between a homeowner and his daughter when the homeowner gave "specific, detailed

instructions to his daughter for winterizing the home."  494 P.2d 178, 182 (N.M. Ct.

App. 1971).  In the instant matter, Plaintiff has alleged that Apodaca provided

compensated house-sitting services for Defendant Landau and that he was expected to

carry out certain duties including spending the night at the house, watching over and

caring for the house, and providing the appearance of regular occupancy at the house.

*Doc. 82* ¶¶ 241, 435.  These facts are sufficient to raise a plausible argument that

Defendant Landau asked Apodaca to complete certain tasks and that she exercised

enough control over Apodaca to create an agency relationship.

  However, the Plaintiff's allegations are insufficient to plausibly claim that

Apodaca was acting within the scope of his agency or employment when he sexually

assaulted Plaintiff.  As noted, *supra* at 5, n.1, a principal may be vicariously liable for the

intentional torts of the agent if the tort was committed within the scope of employment

of the agent.  *Tercero*, 48 P.3d at 58.  In *Miera v. George*, the New Mexico Supreme Court

found that an act is within the course of employment if:

(1) it be something fairly and naturally incident to the business, and if
(2) it be done while the servant was engaged upon the master's
business and be done, although mistakenly or illadvisedly, with a view
to further the master's interests, or from some impulse of emotion
which naturally grew out of or was incident to the attempt to perform
the master's business, and did not arise wholly from some external,
independent, and personal motive on the part of the servant to do the
act upon his own account.

237 P.2d 102, 105 (N.M. 1951) (citations omitted); *see also* N.M. R. Civ. UJI 13-407.

Plaintiff's main argument is that Apodaca's criminal conduct with Plaintiff was within the scope of Apodaca's employment as a house-sitter because one of Apodaca's duties was to "provid[e] an outward appearance that the home was continuously lived in," and engaging in sexual activity furthers this goal. *Doc. 93* at 10. Defendant counters that Apodaca's conduct with Plaintiff cannot have been in the scope of his employment as a house-sitter and that Apodaca's actions were solely based on external and personal motivations. *Doc. 85* at 12-13.

The case law does not support Plaintiff's contention that Apodaca's criminal sexual assault of a minor at the house was within the scope of his employment as a house-sitter. The New Mexico Supreme Court has found that "[i]ntentional torts arising from sexual harassment are generally considered to be outside the scope of employment." *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 71 (N.M. 2004) (finding that sexually harassing a subordinate employee was not within a supervisor's scope of employment) (citations omitted). If sexual harassment is typically not within the scope

of employment, it is difficult to imagine how sexual assault, which is a significantly

more serious and violent crime, can be within any scope of employment.  Indeed, the

New Mexico Supreme Court has never made such a finding.[3]  *See Tercero*, 48 P.3d at 58

(sexual abuse of a minor by a priest "was never within the scope of [the priest's]

employment"); *see also Tilga v. United States*, 2014 WL 12518918 (D.N.M. June 19, 2014)

(finding that an employee at a halfway house did not act within the scope of his

employment when he sexually assaulted a resident).  Many other state courts have also

declined to find sexual assault within the scope of employment.  *See, e.g.*, *John R. v.*

*Oakland Unified Sch. Dist.*, 769 P.2d 948, 956-57 (Cal. 1989) (holding that a teacher's

sexual molestation of a student is not within the teacher's scope of employment); *Hamed*

*v. Wayne Cnty.*, 803 N.W.2d 237, 244-45 (Mich. 2011) (finding that "there is no question"

that a sheriff deputy's sexual assault of a jail inmate was beyond the scope of the

deputy's employment).  In the aforementioned cases, there was at least some connection

between the employment duties of the perpetrator and the victim of the sexual assault,

and the courts still held that the sexual assault fell outside the scope of employment.

For example, supervisors are expected to interact with subordinates as part of the job

(*Ocana*), priests and teachers are expected to work closely and even form emotional

---

[3] In *Spurlock v. Townes*, the New Mexico Supreme Court held that a prison guard was acting within the scope of his employment when he sexually assaulted an inmate, but this decision was made pursuant to the aided-in-agency theory of vicarious liability.  368 P.3d 1213, 1218 (N.M. 2016).  Plaintiff does not raise the aided-in-agency theory in either the Complaint or briefing.

bonds with young children (*Tercero* and *John R.*), and sheriff deputies and halfway house employees are tasked with overseeing and, at times, physically restraining inmates and halfway house residents (*Hamed* and *Tilga*).  By contrast, there is no connection between Apodaca's duties as a house-sitter and working or interacting with children such as Plaintiff.  Apodaca's choice to bring a child into Defendant Landau's home, provide him with alcohol and narcotics, and sexually assault him was entirely divorced from any aspect of his work as a house-sitter.

The Court is not persuaded by Plaintiff's argument that Apodaca's sexual assault of Plaintiff was in the scope of his employment because one of Apodaca's job duties was to make the house "appear occupied" and having guests, drinking alcohol, and conducting sexual activity furthers this goal.  *Doc. 93* at 10.  First, whether having guests was within the scope of Apodaca's employment as a house-sitter is irrelevant because the mere act of bringing Plaintiff to the home was not tortious.  Second, it is not clear that consumption of alcohol or sexual activity actually contribute to making a house appear occupied.  A house appears occupied when people and/or cars enter and leave the property, lights within and outside of the home are turned on and off, or packages and other mail are taken inside.  In contrast to these public-facing activities, consumption of alcohol and sexual activity are often conducted in private spaces and do

not materially contribute to the lived-in appearance of a home.[4]  Even if *legal and consensual* alcohol consumption and sexual activity somehow increase the lived-in appearance of a home and could feasibly be considered part of the scope of employment of a house-sitter,[5] forced alcohol consumption and criminal sexual conduct with a minor is simply too attenuated from the goal of making a home appear occupied to be part of a house-sitter's scope of employment.

Further, there is no plausible argument that Apodaca provided Plaintiff with alcohol and narcotics and then sexually assaulted him in Defendant Landau's home "with a view to further [Defendant Landau's] interests, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform [Defendant Landau's] business."  *Miera*, 237 P.2d at 105.  As the Court noted in its previous order in response to Plaintiff's argument that having criminal sexual contact with Plaintiff was part of Apodaca's scope of employment as a supervisor of minor students in an afterschool program, Apodaca allegedly engaged in inappropriate sexual contact with Plaintiff over a long period of time and in a variety of settings, both before and after he assaulted Plaintiff in Defendant Landau's home.  *See generally docs. 82, 71.*

---

[4] Plaintiff himself admits that sexual activity is generally conducted privately.  *Doc. 93* at 12 (arguing that Defendant Landau should have foreseen that Apodaca might sexually assault Plaintiff in the home because "[a]dults understand that sexual activity requires a location away from prying eyes").
[5] Plaintiff's argument is essentially that *any* activity conducted by the house-sitter could feasibly contribute to the lived-in appearance of the home and is thus in the scope of employment of a house-sitter.  If this were true, then a homeowner would be liable for any and all torts committed by a house-sitter, and the scope of employment limitation on vicarious liability would be rendered meaningless in this context.

This pattern of assaults is strong evidence that Apodaca did not associate his behavior with Plaintiff with any aspect of his job duties in the various employment positions.  By contrast, Apodaca was clearly acting "wholly from some external, independent, and personal motive" to carry out his criminal sexual desires.   *Miera*, 237 P.2d at 105. Defendant Landau's home, like the afterschool program, was simply a means of access for Apodaca to act on this personal motive.  *See doc. 71* at 11.

Lastly, Plaintiff's argument that Defendant Landau is vicariously liable for Apodaca's actions because she negligently hired him is unavailing.  Plaintiff relies on *Medina v. Graham's Cowboys, Inc.* to argue that an employer may be vicariously liable for the actions of an employee if the employer was negligent in hiring the employee.  827 P.2d 859 (N.M. Ct. App. 1992).  However, *Medina* does not stand for the proposition that an employer who is liable under a negligent hiring theory is also *separately* liable under a vicarious liability theory.  Rather, *Medina* holds that if a court finds that an employer negligently hired an employee, the employer can be held vicariously liable for damages caused by tortious actions of the employee.  *Id*. at 864.  In fact, the *Medina* extension of vicarious liability required not only negligent hiring but also that the tort by the employee was "a reasonably foreseeable result of the employment relationship."  *Id*. As explained in greater detail below, *infra* at 17-24, Plaintiff fails to plausibly allege that Defendant Landau negligently hired Apodaca or that Apodaca's sexual assault of Plaintiff was reasonably foreseeable to her.

11

**B. Premises Liability**

Defendant Landau next seeks to dismiss Plaintiff's premises liability claim against her.  For this claim, Plaintiff argues that Defendant Landau failed to use ordinary care to keep her home safe for use by Plaintiff by "permitting Apodaca to use the premises to commit acts of sexual abuse against Plaintiff[.]"  *Doc. 82* ¶¶ 451-66.  In her Motion to Dismiss, Defendant Landau first argues that Plaintiff was a trespasser in her home.  *Doc. 85* at 14-17.  Thus, Defendant Landau owed no duty to Plaintiff, except to refrain from willfully or wantonly injuring him.  *Id*.  Even if the Court were to find that Plaintiff was a visitor in Defendant Landau's home, Defendant Landau argues that Plaintiff fails to allege how she should or could have known that Apodaca posed a risk to anyone.  *Id*. at 17.

As a preliminary matter, the Court finds that Plaintiff has adequately alleged that he was not a trespasser in Defendant Landau's home.  Under New Mexico law, an unknown guest of a known temporary occupant is not a trespasser.  *See* N.M. R. Civ. UJI 13-1301 ("A trespasser is a person who enters or remains upon the premises of another without the [express] [or] [implied] permission of the [owner] [occupant] of the premises.").  Plaintiff alleges that on one occasion while Apodaca was house-sitting for Defendant Landau, Apodaca took him to the home.  *Doc. 82* ¶ 244.  This allegation is sufficient to establish that Plaintiff was in the house with the express or implied permission of the authorized occupant of the house at the time – Apodaca.

Accordingly, the Court treats Plaintiff as a visitor to Defendant Landau's home in its

premises liability analysis.  *See Ford v. Bd. of Cnty. Comm'rs of Cnty. of Dona Ana*, 879 P.2d

766, 771-72 (N.M. 1994) (eliminating the distinction between licensees and invitees and

substituting instead a single standard of reasonable care under the circumstances, while

retaining trespassers as a separate classification).

> i. *Defendant Landau had a duty to use ordinary care to keep her home safe for use by Plaintiff.*

Like any negligence claim, a premises liability claim requires the plaintiff to

prove that the defendant had a duty of care, that the defendant breached her duty, and

that the plaintiff's injury was caused by the defendant's breach.  *Herrera v. Quality

Pontiac*, 73 P.3d 181, 185-86 (N.M. 2003), *abrogated on other grounds by Rodriguez v. Del Sol

Shopping Ctr. Assoc.*, 326 P.3d 465 (N.M. 2014).  "Whether the defendant owes a duty to

the plaintiff, is a legal question for the courts to decide."  *Lujan v. New Mexico Dep't. of

Transp.*, 341 P.3d 1, 4 (N.M. Ct. App. 2014).  That legal question is one of "policy made

with reference to legal precedent, statutes, and other principles comprising of the law."

*Morris v. Giant Four Corners, Inc.*, 498 P.3d 238, 242 (internal quotation marks and

citation omitted).  Under New Mexico law, a homeowner owes a duty to use ordinary

care to keep the premises safe for use by a visitor, N.M. R. Civ. UJI 13-1309; *see also Ford*,

879 P.3d at 771, including the duty to exercise ordinary care to prevent harmful conduct

from a third person, even if the third person's conduct is intentional, *Rodriguez*, 326 P.3d

at 468-69.  "The duty of ordinary care applies unless the owner/occupier can establish a

policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Id*. at 469.

In the instant matter, the parties dispute whether Defendant Landau had a duty to exercise ordinary care to prevent Apodaca's harmful and intentional conduct against Plaintiff in her Santa Fe home.  Defendant Landau relies on *Chavez v. Torres*, 991 P.2d 1 (N.M. Ct. App. 1999), in arguing that she owed no duty to Plaintiff, *doc. 97* at 7-8.  In *Chavez*, the New Mexico Court of Appeals analyzed a homeowner's duty to exercise reasonable care to control harmful and intentional conduct of a third party against a visitor of the home under Section 318 of the Restatement (Second) of Torts (1965)[6].  *Chavez*, 991 P.2d at 4-7.  Section 318 states:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, *if present*, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

> (a) knows or has reason to know that he has the ability to control the third person, and

> (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 318 (Am. L. Inst. 1965) (emphasis added).[7]

---

[6] The *Chavez* court noted that no New Mexico case had ever directly adopted Section 318 and viewed it only "with favor."  *Chavez*, 991 P.2d at 5.

[7] The Restatement (Second) of Torts § 318 (Am. L. Inst. 1965) has a caveat that states:

> The [American Legal] Institute expresses no opinion as to whether there may not be a duty of reasonable care to control the conduct of the third person

The parties dispute whether the Court may rely on Section 318 to determine duty.  Defendant Landau contends that Section 318 applies and under its application, she had no duty to prevent Apodaca's harmful and intentional conduct against Plaintiff in her home because she was not present or in the vicinity of the home when the subject conduct occurred.  *See doc. 97* at 8.  In addition, Defendant Landau argues that Plaintiff fails to allege how she should or could have known that Apodaca posed a risk to anyone.  *Doc. 85* at 17.  Plaintiff responds by arguing that Section 318 is inapplicable because its application invites foreseeability considerations to determine duty, and under *Rodriguez*, "foreseeability should not be considered when determining duty."  326 P.3d at 468; *doc. 109* at 4-5.  While *Rodriguez* did not expressly address *Chavez*, its logic appears to fatally undermine it.  As such, this Court will assume, without deciding, that Plaintiff is correct.

In *Rodriguez*, the New Mexico Supreme Court explicitly repudiated foreseeability in the analysis of duty, holding that in determining duty as a matter of law, courts must "articulate specific policy reasons, unrelated to foreseeability considerations, if deciding

---

      (1)       where the third person is a trespasser; or

      (2)       where the actor, although not present, *is in the vicinity*, is informed of the necessity and opportunity for exercising such control, and can easily do so.

Restatement (Second) of Torts § 318 caveat (Am. L. Inst. 1965) (emphasis added).

In fact, the *Chavez* court recognized that in New Mexico, there may be situations in which the homeowner's duty of care extends beyond physical presence on the property pursuant to Section 318's caveat.

that a defendant does not have a duty or that an existing duty should be limited." 326

P.3d at 474. In coming to this conclusion, the *Rodriguez* Court explained that

"foreseeability is a fact-intensive inquiry relevant only to breach of duty and legal cause

considerations" and is often left to the jury. *Id*. at 467-68, 470 (explaining that a

foreseeability analysis is fluid, depending on changing fact patterns, and should not be

assessed by courts to consider the existence of a duty because courts are not capable of

anticipating all possible facts that might affect a foreseeability determination).

The duty imposed under Section 318 is premised on considerations of

foreseeability that the New Mexico Supreme Court abandoned in *Rodriguez*. To

determine whether a homeowner has a duty to protect visitors from the harmful and

intentional acts of a third party based on whether *she knows or has reason to know* that she

has the ability to control the third party and *knows or should know* of the necessity and

opportunity for exercising such control over a third party is to judge the foreseeability

of the harmful and intentional conduct by the third party. *See id.* at 473 (New Mexico

Supreme Court noting that whether a defendant "anticipated" an event cannot be used

to determine duty because anticipating something is to say that the event was

foreseeable); *see also Kinsey v. Bray*, 596 N.E.2d 938, 940 (Ind. Ct. App. 1992) (citing

Section 318 and recognizing a homeowner's duty to exercise reasonable care to protect

guests on the property from reasonably foreseeable violent acts of a third party). Thus,

Section 318 appears to have been repudiated by *Rodriguez* and the Court will assume

16

that Defendant Landau had a duty to exercise ordinary care to prevent Apodaca's

harmful and intentional conduct against Plaintiff in her home.[8]

Nevertheless, for the reasons described below, the Court finds that Plaintiff fails

to allege facts that could plausibly lead a reasonable jury to find that Defendant Landau

breached her duty to exercise ordinary care to prevent Apodaca's harmful and

intentional conduct against Plaintiff in her home.

ii. *Plaintiff has failed to allege how Defendant Landau knew or should have known that Apodaca would use her home to intentionally harm Plaintiff.*

Breach of duty determinations are usually reserved for the jury, but if no

reasonable jury would find that the defendant breached the duty of ordinary care, a

court may decide a breach of duty determination as a matter of law.  *Rodriguez*, 326 P.3d

at 473-74.  Albeit irrelevant for duty determinations, foreseeability inquiries are of

course central to breach of duty determinations.  *Id*. at 467.  Juries in New Mexico are

instructed that "[a]s the risk of danger that should reasonably be foreseen increases, the

amount of care required also increases."  N.M. R. Civ. UJI 13-1603.  "Foreseeability as it

relates to breach of duty is a general analysis and does not require that the particular

harm to the plaintiff have been anticipated."  *Rodriguez*, 326 P.3d at 468 (citing *Spencer v.

Health Force*, 107 P.3d 504 (N.M. 2002)).  The question before the jury in determining if

an owner breached its duty "is whether the foreseeable likelihood and severity of

---

[8] Defendant Landau provides the Court with no policy reason, unrelated to foreseeability considerations, that compels a limitation on her duty.

injuries that might have occurred due to the defendant's conduct warranted the

additional precautions argued by the plaintiff." *Rodriguez*, 326 P.3d at 468 (citing *Ford*,

879 P.2d 766).

In her Motion to Dismiss, Defendant Landau does not discuss foreseeability in

the context of arguing whether she breached her duty of care to Plaintiff when Plaintiff

was injured by Apodaca on her private property.  However, Defendant Landau argues

that Plaintiff has failed to plead a negligence claim because there is "no factual

allegation regarding how Ms. Landau did, should have, or even could have known

Robert Apodaca posed a risk to anyone." *Doc. 85* at 17.  Plaintiff responds by arguing

that he has alleged numerous avenues in which Defendant Landau could have obtained

knowledge regarding Apodaca's concerning behavior with minors.  *Doc. 109* at 7-8.  In

support of this argument, Plaintiff contends that Apodaca's public behavior was so

concerning that Defendant Landau could have had the opportunity to "make similar

observations" of Apodaca's concerning behavior.  *Id*. at 8.  Additionally, Plaintiff

contends that it is plausible that reports from neighbors, recordings of doorbell cameras

or security equipment, and recorded entrances to Defendant Landau's gated

community could have put her on notice that Apodaca would use her home to sexually

assault Plaintiff.  *Id*.

While Plaintiff argues in his briefing that Defendant Landau **could have learned**

of Apodaca's dangerousness, he **fails to allege any facts** that could plausibly establish

that she **should have known** of his dangerousness or that he would use her home to intentionally harm Plaintiff.[9]  Plaintiff alleges that Apodaca and his family provided compensated house-sitting services for Defendant Landau in Summer 2020.  *Doc. 82* ¶¶ 240-41.  Plaintiff does not allege that Defendant Landau ever met Apodaca, knew who Apodaca was, spoke with Apodaca, or ever observed Apodaca's behavior—alone or with minors—in a public or private space.  Plaintiff does not allege that Defendant Landau ever knew of any allegations regarding Apodaca's concerning behavior with minor children.  Plaintiff contends that Apodaca's concerning behavior with minors at Gonzales Community School ("GCS") during the 2018-2019 and 2019-2020 school years could have put Defendant Landau on notice of Apodaca's concerning behavior with minors but fails to allege how Defendant Landau has any relation or connection to GCS. *Doc. 109* at 8 (citing to *Doc. 82* ¶¶ 67, 74, 76, 247, 250).  Based on the Plaintiff's allegations, there is no basis to conclude that Defendant Landau knew, should have known, or could have known about Apodaca's behavior at GCS, especially considering Plaintiff's allegations that GCS staff "did not report any concerns to law enforcement or other appropriate authorities."  *Id*. ¶ 163.  Finally, Plaintiff's speculative argument that Defendant Landau could have been on notice of Apodaca's concerning behavior based on security footage or reports from neighbors is unavailing.  Plaintiff does not allege

---

[9] Plaintiff's Complaint does contain legal conclusions that Defendant Landau should have known of the risk Apodaca posed (*see e.g., doc. 82* ¶ 461), but "the court need not accept the truth of any legal conclusions." *Iqbal*, 556 U.S. at 678.

that Defendant Landau ever received concerning reports from neighbors about her home during her absence, or that her home or the gate to her neighborhood contained security equipment in Summer 2020, let alone that she was or should have been reviewing security videos if they existed.

Likewise, Plaintiff fails to allege what information would have put Defendant Landau on notice of Apodaca's concerning behavior with minor children had she conducted a formal background check before allowing him to watch her Santa Fe home in Summer 2020. It is not alleged that Apodaca had a criminal record before Summer 2020. *See doc. 82* ¶ 181 ("On *July 24, 2023*, Apodaca pleaded guilty to sexually abusing at least one [GCS] student while he was a nurse aid there[.]") (emphasis added). Reports of Apodaca's concerning behavior at GCS before Summer 2020 were internal, and Plaintiff does not allege that they were made publicly available. *See doc. 82* at ¶ 163 ("The SFPS Defendants, including Flint and Chavez, did not report any concerns to law enforcement or other appropriate authorities such as the Children, Youth, & Families Department."). Further, Apodaca's mere ineligibility for rehire at Presbyterian Healthcare Services in 2018 would not have put Defendant Landau on notice that Apodaca would intentionally harm a minor in her home. *See doc. 82* at ¶44.

Based on the foregoing reasons, the Court finds that Plaintiff fails to make a plausible claim of premises liability against Defendant Landau because Plaintiff fails to

sufficiently allege how the general harm or consequence to Plaintiff was foreseeable

when Defendant Landau hired Apodaca to house-sit her home.

### C. Negligent Entrustment

Defendant Landau next seeks to dismiss Plaintiff's claim that Defendant Landau

was negligent when she entrusted Apodaca with access to her home.  "New Mexico

courts have recognized negligent entrustment and negligent entrustment of chattel as

viable causes of action."  *Morris v. Giant Four Corners, Inc.*, 498 P.3d 238, 243 (N.M. 2021).

They have "relied upon Restatement Sections 308 and 390 to set a framework" for the

tort.  *Id*. at 244.  Section 308 states:

> It is negligence to permit a third person to use a thing or to engage in an activity
> which is under the control of the actor, if the actor knows or should know that
> such person intends or is likely to use the thing or to conduct himself in the activity
> in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (Am. L. Inst. 1965).

Section 390 specifically applies the doctrine of negligent entrustment, as

described in section 308 to chattel:

> One who supplies directly or through a third person a chattel for the use of another
> whom the supplier knows or has reason to know to be likely because of his youth,
> inexperience, or otherwise, to use it in a manner involving unreasonable risk of
> physical harm to himself and others whom the supplier should expect to share in
> or be endangered by its use, is subject to liability for physical harm resulting to
> them.

Restatement (Second) of Torts § 390 (Am. L. Inst. 1965).

Plaintiff's claim, however, fails at its origin.  New Mexico courts have not recognized this tort in the context of real property.  *See Morris*, 498 P.3d at 244 (citing to N.M. R. Civ. UJI 13-1646 committee cmt. (noting that negligent entrustment of chattel claims have been recognized in the context of automobiles, but not real property)). While the *Morris* court did extend negligent entrustment of chattel to the retail sale of a good, none of the policies or logic it relied upon apply to real property.  As such, this Court holds that negligent entrustment of real property is not a recognized tort under New Mexico law.

Even assuming such a tort was recognized, Plaintiff's claim would still fail.  As explained above, *supra* p. 19-20, Plaintiff fails to allege how Defendant Landau knew or had reason to know that Apodaca would use her home in a manner involving unreasonable risk of physical harm to Plaintiff.

Therefore, the Court finds that Plaintiff has failed to make a plausible claim of negligent entrustment against Defendant Landau.

### D.  Negligent Hiring

Defendant Landau next seeks to dismiss Plaintiff's claim that Defendant Landau was negligent when she hired, retained, and/or supervised Apodaca.  In Plaintiff's response to the Motion, he argues in two places that Defendant Landau is liable to plaintiff under a theory of negligent hiring.  First, Plaintiff relies on *Medina v. Graham's Cowboys, Inc.* to argue that Defendant Landau "may be vicariously liable" for Apodaca's

actions if she negligently hired him.  *Doc. 93* at 11.  Later, Plaintiff argues that the

Complaint generally establishes that Defendant Landau negligently hired Apodaca as

an employee.  *Id.* at 16-17.

"Negligence in hiring or retention is based on the employer's negligent acts or

omissions in hiring or retaining an employee when the employer knows or should

know, through the exercise of reasonable care, that the employee is incompetent or

unfit."  *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 165 (citations

omitted).  For a negligent hiring claim, "there must be evidence that the employee was

unfit, considering the nature of the employment and the risk he posed to those with

whom he would foreseeably associate, and that the employer knew or should have

known that the employee was unfit."  *Id*. (quoting *Valdez v. Warner*, 742 P.2d 517, 519

(N.M. Ct. App. 1987).  "The proper standard for determining whether an employer

should be held liable for negligent supervision or retention of an employee is whether

the employer knew or reasonably should have known that some harm might be caused

by the acts or omissions of the employee who is entrusted with such position."  *Cain v.*

*Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 96 (N.M. Ct. App. 2007) (citation

omitted).  "Whether the hiring or retention of an employee constitutes negligence

depends upon the facts and circumstances of each case."  *F & T Co. v. Woods*, 594 P.2d

745, 749 (N.M. 1979).

23

The Court concludes that Plaintiff fails to make a plausible claim that Defendant Landau negligently hired Apodaca.  For the same reasons explained above, *supra* p. 19-20, Plaintiff has failed to allege how Defendant Landau knew or reasonably should have known that Apodaca was unfit to perform house-sitting services for her.  Plaintiff appears to argue that failing to perform a background check on a house-sitter can constitute per se negligence, but he provides no caselaw to support such a duty.  Moreover, as described above, *supra* p. 20, Plaintiff fails to allege what information a formal background check on Apodaca would have revealed before Summer 2020.  Because of this failure, Plaintiff's second argument—relying on *Medina* as described above, *supra* p. 11— also fails.  Based on the foregoing reasons, the Court finds that Plaintiff has failed to plausibly allege that Defendant Landau negligently hired Apodaca.

## IV.   AMENDMENT

Plaintiff requests that the Court allow him to amend his complaint rather than dismiss his claims against Defendant Landau because "amendment would not be futile . . ."  *Doc. 93* at 18.  Plaintiff attached a proposed Second Amended Complaint for Damages for Violation of Civil Rights, Title IX, and Other Tortious Conduct to his Response to Defendant Landau's Motion ("Proposed Second Amended Complaint").  *See generally doc. 93-1.*  Based on the analysis above, the Court would find this proposed complaint futile as to the claims against Defendant Landau.  Simply put, none of the

24

new factual allegations lift any of the negligence claims against Defendant Landau past the plausibility bar.

Nevertheless, the Court will permit Plaintiff a short time period within which to file a motion to amend his Complaint if he believes he can allege sufficient facts to make a plausible negligence claim against Defendant Landau based on the Court's analysis herein.

## V.   CONCLUSION

For the foregoing reasons, Defendant Landau's Motion to Dismiss (*doc. 85*) is GRANTED.  The Vicarious Liability claim (Count XI) against Defendant Landau is DISMISSED WITH PREJUDICE.  The Negligence/Premises Liability claim (Count XII) against Defendant Landau is DISMISSED WITHOUT PREJUDICE.  Plaintiff is granted **seven (7) days from the entry of this Order** to file a motion to amend and proposed amended complaint as described above.  If Plaintiff chooses to file a motion to amend and the motion is opposed, the motion will be subject to futility analysis.  If no motion to amend is timely filed or if it is denied, the dismissal of the Negligence/Premises Liability claim (Count XII) against Defendant Landau will be converted to a dismissal WITH PREJUDICE.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**