IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DOE,

      Plaintiff,

vs.                                                   Civ. No. 23-1025 GBW/JFR

SANTA FE PUBLIC SCHOOLS; ROBERT
APODACA; CANDICE FLINT; ROBIN CHAVEZ;
ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, SANTA NIÑO
REGIONAL CATHOLIC SCHOOL;
SAN ISIDRO PARISH; CRISTO REY PARISH;
SHRINE OF OUR LADY OF GUADALUPE
PARISH; ST. ANTHONY OF PADUA PARISH;
ST. ANNE'S PARISH; ST. JOHN THE BAPTIST
PARISH; SANTA MARIA DE LA PAZ CATHOLIC
COMMUNITY PARISH; THE CATHEDRAL
BASILICA OF ST. FRANCIS OF ASSISI PARISH,
and CHRISTOPHER LOPEZ,

      Defendants.

ORDER DENYING PLAINTIFF'S
MOTION TO ADDRESS APPARENT CONFLICT

**THIS MATTER** is before the Court on Plaintiff's Corrected Motion to Address Apparent Conflict of Counsel for Defendants Flint and Chavez and To Stay Proceedings Until Determination is Made ("Motion"), filed March 20, 2025. Doc. 147. On April 3, 2025, Defendants Chavez and Flint filed their Response. Doc. 156. On April 14, 2025, Plaintiff filed a Reply. Doc. 158. Having reviewed the briefing and the relevant law, the Court finds the Motion is not well taken and is **DENIED WITHOUT PREJUDICE**.

          **I.**         **RELEVANT BACKGROUND AND ARGUMENT**

On June 4, 2024, Plaintiff filed a Second Amended Complaint for Damages for Violation of Civil Rights, Title IX, and Other Tortious Conduct. Doc. 82. Plaintiff's Second Amended

Complaint alleges that Defendant Apodaca sexually abused Plaintiff, a minor, and was enabled to do so by the other named Defendants. Two of the named Defendants – Defendants Flint and Chavez ("Defendants"), each being sued in their individual capacities pursuant to 42 U.S.C. § 1983 and Section 41-4-6 of the New Mexico Tort Claims Act, – are represented by Attorney Carlos Quinones. Plaintiff's Motion argues that Attorney Quinones "is engaged in a conflicted three-way representation involving antagonistic defendants and another antagonistic witness." Doc. 147 at 1. The "antagonistic witness" is named nonparty witness Anita Hett. *Id.* Attorney Quinones defended Anita Hett during her deposition in a separate but related case (the "*Madrid*" case).[1]

By way of background, Defendant Apodaca was a nurse's aide employed at relevant times by Gonzales Community School and by Santo Niño Regional Catholic School. Doc. 147 at 3. Defendant Flint was the principal at Gonzales Community School for academic years 2018-2019 and 2019-2020. *Id.* at 4. Defendant Chavez was the assistant principal at Gonzales Community School for academic years 2017-2018 and 2018-2019 and principal at Santo Niño Regional Catholic School thereafter. *Id.* Nonparty witness Anita Hett was the Santa Fe Public Schools head district nurse during the relevant period of time and Defendant Apodaca's supervisor while he was employed at Gonzales Community School. *Id.*

Also relevant to Plaintiff's Motion is Defendant Chavez's Motion for Summary Judgment on the Basis of Qualified Immunity on Count II; and on Other Grounds on Count VI of Plaintiff's Second Amended Complaint currently pending before Magistrate Judge Gregory B. Wormuth, Presiding by Consent. Doc. 127. Attached to Defendant Chavez's summary

---

[1] The case at issue is *Natasha Madrid, as parent and guardian to J.L., a minor child, Plaintiff, v. Santa Fe Public Schools, Robert Apodaca, in his official and individual capacity, and John and Jane Does 1-10, Defendants*, First Judicial District Court No. D-101-CV-2023-01562 ("*Madrid*" case). Doc. 147 at 7-8, n. 5.

judgment motion is her affidavit in which she affirmatively swears in relevant part that (1) it was never reported to her that Plaintiff or any other student was making excessive trips to the nurse's office; (2) she had no knowledge of nor was it ever reported to her during her tenure at Gonzales Community School that the nurse's office door was closed or locked with any student(s) present therein; (3) she had no knowledge of nor did she ever observe or have reported to her that Defendant Apodaca was holding hands with any students at Gonzales Community School; (4) no security personnel or staff employees at Gonzales Community School ever reported to her inappropriate conduct by Defendant Apodaca towards any student(s) at the school at any time; and (5) she had no knowledge nor did she ever observe during her tenure at Gonzales Community School that Defendant Apodaca was engaging in inappropriate behavior of any kind. Doc. 127-1.

With the foregoing in mind, Plaintiff's Motion presents deposition testimony taken in the "*Madrid*" case to argue that Mr. Quinones has undertaken representation directly adverse to Defendants Flint and Chavez and nonparty witness Anita Hett in this case. By way of example, Plaintiff explains that nonparty witness Anita Hett testified in the *Madrid* case that Defendant Chavez "personally informed her of at least two complaints about [Defendant] Apodaca's conduct with students," one involving an incident of horseplay between Defendant Apodaca and students during recess.[2] Doc. 147 at 6-7. As to that complaint, Plaintiff states that Anita Hett testified it was the responsibility of school administrators, and not hers, to address "recess duty" conduct. *Id*. Plaintiff states that Anita Hett also testified in the *Madrid* case that Defendant Chavez relayed to her "the complaint" about excessive visits by students to the nurse's office. *Id*. Plaintiff explains that Defendant Flint as a nonparty witness in the *Madrid* case also testified

---

[2] Plaintiff adds nontestimonial commentary in parentheses that "[a]ny educator understands horseplay as a sign of grooming behavior." Doc. 147-6.

that there were reports about students making excessive trips to the nurse's office that were known to Defendant Chavez. *Id.* at 7. Plaintiff states that Defendant Flint also testified she discovered Defendant Apodaca and a young boy in the nurse's office with the door locked. *Id.* Plaintiff explains Defendant Flint testified that any investigation as to these incidents would rest with Anita Hett, while Anita Hett testified that the responsibility rested with the administrators at the school. *Id.* This testimony, Plaintiff argues, creates a "circular conflict" with Anita Hett shifting liability to Defendants Chavez and Flint, and Defendant Flint shifting liability to Anita Hett.

Plaintiff characterizes the *Madrid* case deposition testimony cited above as "suggesting, if not outright claiming," that these three individuals had "notice [of] and responsibility [for]" Defendant Apodaca's alleged sexual misconduct. Doc. 147 at 11. Plaintiff further argues that it contradicts Defendant Chavez's affidavit in this case and demonstrates an apparent conflict due to Defendants Flint and Chavez and nonparty witness Anita Hess's direct adversity. *Id.* at 9. Plaintiff argues that this directly adverse testimony will materially limit Attorney Quinones's representation with respect to his duty of loyalty and confidentiality to each client in this case thereby presenting a concurrent conflict of interest. *Id.* at 10. For instance, Plaintiff asserts that Attorney Quinones's concurrent representation prohibits him from using information from his representation of one client to the disadvantage of the other, *i.e.,* contradictory information regarding the other's "notice and responsibility," and places the vigor of his examination as to each witness at risk where their respective exposure to liability rests on impeaching each other. *Id.*

Plaintiff argues that Attorney Quinones's representation of Anita Hett as a nonparty witness in *Madrid* casts a cloud over these proceedings and is prejudicial to Plaintiff because

4

(1) Anita Hett is a key witness regarding Defendant Chavez's claim that she had no notice as to the danger posed by Defendant Apodaca; (2) Attorney Quinones's representation of Anita Hett precludes Plaintiff's counsel from speaking directly to her and has created an appearance of Attorney Quinones influencing her testimony given that Defendants Flint and Chavez are the two individuals "most likely to be damaged by her testimony"; and (3) Attorney Quinones potentially had "split allegiances and a pecuniary interest in limiting testimony concerning notice issues for specific other individual clients" when he represented Anita Hett for her deposition in the *Madrid* case. Doc. 147 at 12.

Plaintiff asserts that the "clear potential, and indeed likelihood, of divided loyalty threatens the sanctity of these proceedings." Doc. 147 at 13. Plaintiff requests this Court "examine the apparent conflict and determine whether or not a conflict exists, which conflicts exist, if they are subject to waiver, and if so whether each conflict was timely waived." *Id.* Plaintiff seeks a stay of proceedings until any conflict is resolved. *Id.* at 12-13.

Defendants contend there is no conflict and that Plaintiff's Motion is "nothing more than a ploy to try to avoid responding to dispositive motions."[3] Doc. 156 at 5-8. Defendants state that Attorney Quinones obtained written "waivers of conflict" forms from them in compliance with the New Mexico Rules of Professional Conduct and that Defendants "knowingly, willingly and voluntarily executed" them. *Id.* Defendants explain that neither of them were named parties in the *Madrid* case, but that Attorney Quinones, who was already representing Defendant Flint in this case, represented Flint for a nonparty witness deposition in the *Madrid* case. *Id.* Defendant Chavez was not deposed in the Madrid case. *Id.* Defendants explain that they properly disclosed

---

[3] Defendants detail this case's procedural history and Plaintiff's sought after extensions to file response briefs. Doc. 156 at 1-5, 8-9. The Court does repeat this here.

5

Anita Hett as a witness in their Rule 26 Initial Disclosures. *Id.* Defendants explain that Santa Fe Public School's insurance carrier assigned Attorney Quinones to represent Anita Hett solely for purposes of her deposition in *Madrid*, and that Anita Hett is not a party to the present proceedings and Attorney Quinones has not represented her for any other purpose and for no other reason at any other time. *Id.* Defendants state that if Anita Hett were to be named a party in the present case and her testimony was deemed to be in conflict with Defendants, the insurance carrier would simply assign her separate legal counsel. *Id.* Defendants argue this precautionary measure does not necessitate the drastic and unfounded relief Plaintiff seeks.

Defendants contend that Plaintiff's reference to Defendant Flint's testimony regarding Defendant Apodaca and a young boy in the nurse's office with the door locked is incomplete[4] and fails to include that Defendant Chavez was not employed at Gonzales Community School at that time. *Id.* Defendants contend that Plaintiff's Motion fails to identify any other purported conflict between Defendant Flint and Chavez. *Id.*

Defendants contend that Plaintiff's Motion is frivolous and that they reserve the right to seek appropriate sanctions against Plaintiff's counsel or, alternatively, that the Court *sua sponte* assess sanctions for Plaintiff's frivolity. *Id.* at 10.

In Reply, Plaintiff presents "additional examples of the sworn contradictory statements with this trio of defendants and witnesses that strongly suggest a conflict."[5] *Id.* at 4-6. Plaintiff asserts that the "potentially layered conflicts created by the three-way joint representation" endanger these proceedings and that it is appropriate for this Court to establish, through in

---

[4] Defendants state that Defendant Flint testified that nothing inappropriate was taking place when she opened the locked door and that she nonetheless administered a written reprimand to Defendant Apodaca on the same date of the incident. Doc. 156 at 6.

[5] These "additional examples" minimally augment the testimony already cited in Plaintiff's Motion, *i.e.,* a horseplay incident on the playground, reports regarding the frequency of students visiting the nurse's office, and who had supervisory authority over Defendant Apodaca. Doc. 158 at 6-11.

6

camera review, a record that evaluates and determines the conflict issues to include, *inter alia,* determination of the conflicts, whether the conflicts are waivable, whether valid waivers were obtained, whether there was informed consent, and a "determination as to continuation of counsel." Doc. 158 at 2, 6-11.

## II. <u>ANALYSIS</u>

Attorneys are bound by the local rules of the court in which they appear. *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1383 (10th Cir.1994). The United States District Court for the District of New Mexico has adopted the New Mexico Rules of Professional Conduct. D.N.M.LR-Civ. 83.9. Primarily at issue here is Rule 16.107, *Conflict of interest; current clients*, which provides:

> **A.     Representation involving concurrent conflict of interest.**  Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1)     the representation of one client will be directly adverse to another client; or
> >
> > (2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> **B.     Permissible representation when concurrent conflict exists**.  Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:
>
> > (1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2)     the representation is not prohibited by law;
> >
> > (3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4)     each affected client gives informed consent, confirmed in writing.

NMRA 16-107.

The Court finds Plaintiff's Motion is not well taken for several reasons.

Plaintiff's Motion seeks to alert the Court to an apparent or potential conflict and asks the Court to determine through in camera review whether an actual conflict exists in the first instance and, if so, to evaluate whether Attorney Quinones has complied with the necessary ethical obligations in response.  In bringing his Motion, Plaintiff states he is following procedures "embrace[d]" by the Tenth Circuit when a potential conflict is discovered.  Doc. 158 at 1.  The case law Plaintiff cites for this procedure, *Johnson v. Board of County Com'rs for County of Fremont*, 85 F.3d 289 (10th Cir. 1989), specifically addressed the potential conflict between the defenses available to a government official sued in his individual and official capacities.  85 F.3d at 493.  The Tenth Circuit held that when a potential conflict existed, it is permissible, but not required, for the official to have separate counsel for his two capacities.  The Tenth Circuit additionally stated that

> [i]n the service of these interests, we embrace the Second Circuit's procedure whereby counsel notifies the district court and the government defendant of the potential conflict, the district court determines whether the government defendant fully understands the potential conflict, and the government defendant is permitted to choose joint representation.

*Id.* at 494.  These interests, *i.e.,* the potential conflict when being sued in both official and individual capacities, are not present here.  As such, Plaintiff's reliance on this case to notify the Court of a potential conflict is misplaced.[6]  And notably, the Tenth Circuit only requires separate counsel if a *potential* conflict turns into an *actual* conflict.  *Id.* at 493.

---

[6] Plaintiff also cites *Rubio v. BNSF Railway Co.,* 548 F.Supp.2d 1220, 1223 (D.N.M. 2008) for the legal standard that "[c]onsideration of conflicts of counsel are governed by two sources of authority: local rules of professional conduct and national professional standards." Doc. 147 at 8.  Plaintiff misstates the legal standard.  *Rubio* states as follows:

Plaintiff's reliance on deposition testimony from the *Madrid* case is tenuous. Plaintiff relies solely on deposition testimony from the *Madrid* case to sound the alarm for a potential conflict here and asserts that "once depositions are allowed in *this* case, it is only more likely that these circular conflicts will meld and grow. The problems identified herein are likely to worsen." Doc. 147 at 7-8, n. 5 (emphasis in original). This is mere speculation. Further, in describing the deposition testimony in the *Madrid* case, Plaintiff concedes the depositions in that case were

> limited in scope and purpose because it was a state Tort Claims Act case, not a civil rights action. The claims at issue in that case were significantly different than those involving constitutional claims here. Moreover, the individual witnesses were not defendants. State counsel's focus was different.

Doc. 147 at 7-8, n. 5. The Court further notes that the *Madrid* case involved a different plaintiff and time period (academic years 2015-2016 and 2016-2017), and that neither Defendant Flint nor Defendant Chavez were administrators at the Gonzales Community School at the time.[7] Thus, in the face of factual and legal distinctions between the *Madrid* case and the case here, the Court finds Plaintiff's reliance on and conclusions drawn from selectively discrete and conceivably out-of-context snippets of deposition testimony is not enough to demonstrate

---

> The Tenth Circuit has held that *motions to disqualify* are governed by two sources of authority. *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1383 (10th Cir. 1994). First, attorneys are bound by the local rules of the court in which they appear. *Id.* In this Court, the New Mexico Rules of Professional Conduct apply. *See* D.N.M.LR-Civ. 83.9. Second, because *motions to disqualify* counsel in federal proceedings are substantive motions affecting the rights of the parties, standards developed under federal law also apply. *Cole*, 43 F.3d at 1383 (citing *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). "Therefore, *motions to disqualify* are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Id.* (citation and internal quotation marks omitted).

*Rubio*, 548 F. Supp. 2d at 1222-23 (emphasis added). Here, Plaintiff has not presented the Court with a motion to disqualify.

[7] *See St. Louis Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system).

Attorney Quinones is representing clients who are directly adverse to each other in this case, or that there is a significant risk his representation will be materially limited by his responsibilities to the other.[8] "[T]he mere potentiality [of multiple clients adverse to each other] is not enough to trigger Rule 1.7(b); the potentiality must create a 'significant risk.'" § 1.7-2 *Simultaneous Representation of Adverse Multiple Clients in Related Matters, Legal Ethics, Law. Deskbk. Prof. Resp.* § 1.7-2 (2024-2025 ed.); *see also generally O'Hanlon v. AccessU2 Mobile Solutions, LLC*, 2018 WL 3586395 (D. Colo. July 26, 2018) (explaining that direct adversity does not exist between co-defendants even if one may indirectly implicate the other, especially when all defendants deny liability in general); *DelConte v. Monroe Township Board of Education*, 2020 WL 6119859 (D.N.J. Oct. 16, 2020) (explaining that the disqualification of counsel is a "drastic measure" that should only be granted when warranted by existing not possible conditions).

The procedural posture and relief Plaintiff seeks further underscores the speculative nature of Plaintiff's Motion. For instance, Plaintiff relies on case law and cites legal standards for addressing motions to disqualify counsel,[9] yet does not move here to disqualify Attorney Quinones. Instead, Plaintiff's Motion seeks a stay of the proceedings while the Court, with little

---

[8] Anita Hett is not a named party in this case. Additionally, Anita Hett, being duly sworn, has affirmed that "Mr. Quinones has not represented me at any other time for any purpose or for any other matter, except for representing me for my one-day deposition in the *Madrid* lawsuit." Doc. 156-5 at 2.

[9] Plaintiff cites: (1) *Day-Peck v. Little*, 493 P.3d 477 (N.M. Ct. App. 2021) (defense counsel filed and court affirmed granting of motion to disqualify plaintiffs' counsel based on conflicting claims of mother and children to insurance proceeds); (2) *Living Cross Ambulance Service, Inc. v. New Mexico Public Regulation* – 338 P.3d 1258 (N.M. S.Ct. 2014) (court found plain error for not staying proceedings and allowing counsel to proceed in the face of a motion to disqualify); (3) *Bowers, M.D. v. Ophthalmology Group*, 733 F.3d 647 (6th Cir. 2013) (plaintiff brought and court affirmed granting of motion to disqualify defense counsel based on past attorney-client relationship that existed between plaintiff and defense counsel); (4) *In re Cedent Corp. Sec. Litigation*, 124 F.Supp.2d 235, 241-244 (D.N.J. 2000) (court denied co-defendant's motion for declaratory judgment to retain its lawyer after lawyer moved to firm representing officer of co-defendant corporation who was a witness in securities action and where co-defendant officer had discussed confidential information about accounting firm and was going to testify against co-defendant's interests in case involving fraud); and (5) *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.* 2009 WL 121140 (E.D. Ark. May 4, 2009) (attorneys' representation of a nonparty witness regarding a trial subpoena during the same trial in which they served as defendant's attorneys did not warrant the attorneys' disqualification from the case).

10

more than conjecture to consider, determines in the first instance if an actual conflict exists and, if so, to evaluate whether all the appropriate ethical obligations have been met, and all for the purpose of providing Plaintiff "with assurances that [the joint representation] does not create further disruption and confusion and jeopardize the sanctity and finality of these proceedings." Doc. 158 at 12.  This is insufficient and lends itself to improperly seeking an advisory opinion from the Court.  *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1420 (10th Cir. 1990) ("The federal courts do not render advisory opinions.").

Moreover, the Court finds that the procedural posture of and relief sought in Plaintiff's Motion while invoking the legal standards of disqualification, including a requisite stay until determined,[10] improperly sidesteps the rigorous legal standards for bringing a motion to disqualify.  The disqualification of an attorney for an alleged conflict of interest is a substantive matter for the courts.  *United States ex rel. Banker v. Community Health Systems, Inc.*, 2011 WL 13151981, *2 (D.N.M. Dec. 15, 2011) (citations omitted).  Motions to disqualify are governed by the ethical rules announced by the national profession and considered "in light of the public interest and the litigants' rights . . . ."  *Cole,* 43 F.3d at 1383.  Because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.  *Id.*

Generally speaking, only clients have standing to move to disqualify counsel.  *Drevaleva v. Department of Veterans Affairs*, 2021 WL 4168600, at *6 (D.N.M.  Sept. 14, 2021); *see also In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 89 (5th Cir. 1976) ("As a general

---

[10] *See Living Cross Ambulance Service, Inc. v. New Mexico Public Regulation Commission*, 338 P.3d 1258, 1262 (N.M. S.Ct. 2014) ("Thus, once a party *moves to disqualify* an adverse party's counsel based on counsel's former representation of the movant, all substantive proceedings must cease until the tribunal determines whether counsel is disqualified.") (emphasis added) (citation omitted).

11

rule, courts do not disqualify an attorney on the grounds of a conflict of interest unless the [] client moves for disqualification."); *Anzora v. Lezama*, 2019 WL 3334685, at *9 (D. Colo. July 24, 2019) ("Generally, courts do not consider claimed violations of ethics rules raised by nonclients."). Motions to disqualify opposing counsel are generally disfavored. *Banks v. Jackson*, 2022 WL 1451904, *9 (Sept. 9, 2022) (string citation omitted). Indeed, "courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices." *Id.* (citation omitted). Nevertheless, some courts grant standing to an opposing party to disqualify counsel "where the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings." *Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046 (D. Colo. 1999); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (standing requires "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of' and (3) 'likl[ihood]' that the injury 'will be redressed by a favorable decision.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))). This remains true even when moving to disqualify counsel. *See Shapiro v. Rynek*, 2017 WL 121617, at *3 (D. Colo. Jan. 11, 2017) (concluding that the movant must have standing to bring a motion to disqualify opposing counsel). Further, the moving party bears the burden of establishing the grounds for disqualification by alleging specific facts and not on the basis of speculation or conjecture. *Banks,* 2022 WL 1451904, *9 (citations omitted).

Here, Plaintiff surreptitiously raises the specter of disqualification, *i.e.,* "determination as to continuation of counsel," and requests that substantive proceedings cease which is required when considering whether disqualification is warranted in the face of an ethical conflict, but has not brought a motion to disqualify nor complied with the legal standards when seeking to do so.

For all of the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion.[11]  The Court cautions Plaintiff against refiling without a sufficient legal and factual basis for alleging that an actual conflict exists based on evidence in this case.  "Specific facts must be alleged and counsel cannot be disqualified on the basis of speculation or conjecture."  *Banks*, 2022 WL 1451904, *9 (citations omitted).

**IT IS SO ORDERED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

[11] Plaintiff's Motion having been denied moots his requested relief for a stay of proceedings.