IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DOE,

     Plaintiff,

v.                                    Civ. No. 23-1025 GBW/JFR

SANTA FE PUBLIC SCHOOLS, *et al.*,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant Robin Chavez's Motion for Summary Judgment (*doc. 127*), the Archdiocese Defendants'[1] Motion for Summary Judgment on Count VIII (*doc. 131*), and Plaintiff's corresponding requests for relief under Rule 56(d) (*docs. 157, 150*).

## I.    Background

Plaintiff's claims arise out of his alleged sexual abuse by Defendant Robert Apodaca. Plaintiff alleges this abuse occurred while he was a student at Gonzales Community School (Gonzales) from approximately 2018–2019, and again while he was a part-time employee at Santa Niño Regional Catholic School (Santa Niño) in summer

---

[1] "Archdiocese Defendants" refers collectively to Defendants Roman Catholic Church of the Archdiocese of Santa Fe, Santo Niño Regional Catholic School, San Isidro Parish, Cristo Rey Parish, Shrine of Our Lady of Guadalupe Parish, St. Anthony of Padua Parish, St. Anne's Parish, St. John the Baptist Parish, Santa Maria de la Paz Catholic Community Parish, and the Cathedral Basilica of St. Francis of Assisi Parish. *See doc. 82* at ¶¶ 11–20.

2020.  Gonzales is operated by Defendant Santa Fe Public Schools (SFPS), and Santa

Niño is a private school operated by the Archdiocese Defendants.  Apodaca worked as

the nurse aide at Gonzales from 2017–2020, then in the after-school care program at

Santo Niño from 2020–2021.  Defendant Robin Chavez was the assistant principal at

Gonzales from 2017–2018 and the principal at Santo Niño from 2019 onward.  At all

relevant times Plaintiff was a minor child.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court must "grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

movant bears the initial burden of showing "that there is an absence of evidence to

support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d

887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The

non-moving party is then required to designate specific facts showing that "there are . . .

genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.  "An issue is 'genuine' if

there is sufficient evidence on each side so that a rational trier of fact could resolve the

issue either way.  An issue of fact is 'material' if under the substantive law it is essential

to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citations omitted).

In applying this standard, the Court must draw all "reasonable inferences" in favor of the non-moving party. *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998). Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Plaintiff's Rule 56(d) Requests

Rule 56(d) allows the court to defer consideration of a summary judgment motion where the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To obtain relief, the nonmovant provides an affidavit or declaration "(1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017). Information that is not included in the affidavit may not be considered. *See Cerveny*, 855 F.3d at 1110 ("The Cervenys' summary judgment response arguably contains the information required in Rule 56(d). But we may not look beyond the affidavit in considering a Rule 56(d) request.").

For purposes of Defendants' motions, the Court finds Plaintiff has satisfied the second and third elements.  Counsel's declarations explain that Plaintiff has propounded written discovery requests on all Defendants, that his efforts have been hampered by several lengthy stays, and that deposition transcripts from a state court case related to Apodaca's abuse of another child were only disclosed on March 14, 2025, and have raised new facts and avenues of questioning.[2]  *Doc. 157-1* at ¶¶ 6–9, 12; *doc. 150-1* at 11–14.[3]  Because there has been a complete stay on discovery since February 10, 2025,[4] *doc. 130,*  Plaintiff has had no opportunity to pursue these additional avenues.

Although there is some disagreement about the exact duration of the stays and Plaintiff's role in proposing or extending them, the undersigned does not find that Plaintiff has been dilatory in pursuing discovery.  Plaintiff has propounded written requests and made some efforts to schedule depositions.  *C.f. Chadwick v. Denver Pub.*

---

[2] This Court will not engage here in an analysis of whether Defendants' discovery responses were deficient and/or untimely.  The mechanism for Plaintiff to assert that argument was in a discovery motion, not on summary judgment.

[3] The Archdiocese Defendants note that Plaintiff's "corrected" declaration (*doc. 153-2*) is unsigned and argue it therefore does not suffice for purposes of Rule 56(d).  *Doc. 162* at 5–6.  There is some support for the proposition that declarations must be signed in order to be properly considered.  *See, e.g.*, *Richardson v. Gallagher*, 553 F. App'x 816, 827 (10th Cir. 2014) (explaining that, in the context of Rule 56, 28 U.S.C. § 1746 allows a written unsworn declaration but requires "a date and signature").  However, the Court need not here decide the effect of counsel's failure to sign because the original declaration, *doc. 150-1*, contains essentially the same substance and the Court's analysis does not vary based on which declaration is considered.  The Court therefore considers and references the original, signed declaration throughout this order.

[4] Counsel's declaration states that a "stay was entered" on January 23, 2025.  *Doc. 157-1* at ¶ 13.  This assertion is inaccurate.  Chavez filed an opposed motion to stay the case on January 23, *doc. 128*, but a stay was not entered until February 10, *doc. 130*.  The Court accepts this assertion as an accidental misstatement rather than an intentional misrepresentation.

*Sch. Dist.*, 2011 U.S. Dist. LEXIS 22078, at *15 (D. Colo. Mar. 4, 2011) (finding plaintiff was dilatory where he had not "served any interrogatories or requests for admissions, or noticed or conducted any depositions."). Plaintiff has been unable to conduct discovery since receiving the deposition transcripts on March 14, 2025. *C.f. Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (plaintiff was not diligent where the court "postponed ruling on the summary judgment motion for over a year to give [him] time to take three depositions," but he never took the depositions); *Long v. Playboy Enters. Int'l*, 565 F. App'x 646, 648 (10th Cir. 2014) (plaintiff failed to diligently pursue discovery where he "had several months to conduct further discovery between the submission of [the] motion for summary judgment and hearing in which additional time was requested"). The Court therefore finds Plaintiff has shown why additional time is needed and what past steps have been taken to obtain the evidence.

Plaintiff has also satisfied the first element by identifying several specific, probable facts that are unavailable, as discussed in more detail below. However, the fourth element—stating how additional time would allow for rebuttal of Defendants' arguments—must be assessed with respect to each claim individually.

## IV. Defendant Chavez

Chavez moves for summary judgment on Counts II and VI of the Second Amended Complaint. She argues for summary judgment on Count II due to qualified immunity, and on Count VI because the evidence shows she was not aware of

Apodaca's dangerous behavior.

A. <u>Count II</u>

Count II asserts a claim under § 1983 against Defendant Chavez in her individual

capacity. *Doc. 82* at ¶¶ 296–322. Relevant to Defendant Chavez, the complaint alleges

that she was on notice of Apodaca's behavior but failed to take any action; failed to

report his conduct to law enforcement or other authorities; knew that Plaintiff was often

alone with Apodaca in the nurse's office for extended periods; knew about Apodaca's

physical displays of affection toward Plaintiff; and was aware of reports of Apodaca's

abusive behavior toward male students. *Id.* Plaintiff claims Defendant Chavez

deprived him of his Fourteenth Amendment rights, specifically the right to equal

protection and the substantive due process right to bodily integrity. *Id.* at ¶¶ 304–05.

i. *Substantive Law*

Under the equal protection clause, "a governmental official or supervisory

employee may be held liable under section 1983 upon a showing of deliberate

indifference to known sexual harassment." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238,

1250 (10th Cir 1999). This principle means a supervisory employee may be liable "for

consciously acquiescing in sexually harassing conduct by a non-state actor over whom

the state actor has authority." *Id.* at 1251 (citing *Woodward v. Worland*, 977 F.2d 1392,

1401 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 3038 (1993)). The refusal to reasonably

respond to misconduct may constitute acquiescence. *Id.* at 1250. However, liability

"must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant, and not on negligence." *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995) (quoting *Woodward*, 977 F.2d at 1399). The plaintiff must show the defendant actually "received notice of a pattern of violations of . . . students' constitutional rights to be free of sexual abuse at the hands of the school district's employees." *Id*. (quoting *Gates v. Unif. Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

Under the due process clause, state actors are liable for another person's actions only where the state actor "affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence."[5] *J.M. v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 458 (10th Cir. 2010) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008)). To prevail on a danger-creation theory, the plaintiff must show that:

> (1) The state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

---

[5] The other exception to the general rule that state actors are not liable for a third party's conduct is the "special relationship doctrine," which "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008) (quoting *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003)). Because there is no affirmative constitutional duty to protect school children from deprivations by private actors, *Maldonado v. Josey*, 975 F.2d 727, 731 (10th Cir. 1992), the § 1983 plaintiff alleging sexual abuse by a teacher must generally proceed under a theory of danger creation. Plaintiff has provided no facts or argument to support the existence of a special relationship here.

*Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008)

(citing *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1280 (10th Cir. 2003)).  Like the equal

protection clause, the due process clause "only protects against 'deliberately wrongful

government decisions rather than merely negligent government conduct.'"  *Id.* (quoting

*Uhrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)).  On the final element, "a plaintiff must

demonstrate a degree of outrageousness and a magnitude of potential or actual harm

that is truly conscience shocking."  *T.D. v. Patton*, 868 F.3d 1209, 1222 (10th Cir. 2017)

(quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002)).

   ii.    *Qualified Immunity*

   Qualified immunity "shields officials from civil liability so long as their conduct

does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Estate of Taylor v. Salt Lake City*, 16 F.4th 744,

757 (10th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, (2015)).  "When a

defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show

the defendant is not entitled to immunity."  *Roska ex rel. Roska v. Sneddon*, 437 F.3d 964,

971 (10th Cir. 2006).  A plaintiff can overcome the presumption of immunity "only by

showing that (1) the officers' alleged conduct violated a constitutional right, and (2) it

was clearly established at the time of the violation, such that every reasonable official

would have understood[] that such conduct constituted a violation of that right."

*Taylor*, 16 F.4th at 757 (quoting *Reavis v. Frost*, 967 F.3d 978, 984 (10th Cir. 2020)).  The

court decides which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To show that a right is clearly established, "the plaintiff must point to 'a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Callahan v. Unif. Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014)). On summary judgment, "the plaintiff's version of the facts must find support in the record." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016)).

When the non-movant requests relief under Rule 56(d) and qualified immunity is at issue, the court's discretion is "restricted." *Jones v. City and Cnty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988). Qualified immunity confers the right "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)). "Because 'the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery' . . . there is a strong policy justification for staying discovery and for refusing requests for additional discovery once a defendant invokes qualified immunity as a defense." *Martin v. Cnty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015) (quoting *Pearson*, 555 U.S. at 231). The non-movant's Rule 56(d) affidavit must

therefore "demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quoting *Lewis v. City of Ft. Collins*, 903 F.2d 752, 754 (10th Cir. 1990)).  It is "insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." *Id.* (quoting *Lewis*, 903 F.2d at 754).

  iii.  *Summary Judgment Record and Probable Facts*

   Defendants' motion presents facts, supported by Chavez's affidavit, that Chavez received no reports and had no knowledge Apodaca was seeing certain students excessively in his office, locking the door while students were in his office, holding hands with students, driving students off campus in his car, or engaging in any inappropriate conduct with students, or that he had a reputation for sexual misconduct. *Doc. 127* at 5–6, Undisputed Material Facts 17–29.

   Plaintiff concedes he is unable to rebut Defendant Chavez's motion with the available evidence.  *Doc. 157* at 11.  However, he requests additional discovery and represents that the facts discovered thereby will show a genuine issue of fact. Specifically, Plaintiff states he expects to obtain evidence showing Chavez knew: that certain boys were spending too much time in the nurse's office with Apodaca, *doc. 157-1* at ¶¶ 16, 20–21, 30; that Apodaca was found in the nurse's office with the door locked

and a boy inside, *id*. at ¶¶ 19, 28; that there was at least one incident of "horse play" on the playground where Apodaca pretended to pour liquid on a boy, upsetting him, *id*. at ¶¶ 16, 20; that there was a report Apodaca took a young boy to the nurse's office alone after the boy reported a growth on his penis, *id*. at ¶ 29; that Apodaca frequently left the school with Plaintiff in his car, *id*. at ¶ 32; and that there were complaints Apodaca had boys sit on his lap and was generally too close with them, *id*. at ¶ 30.  Plaintiff also states he expects to obtain evidence showing that Chavez supervised, evaluated, and appraised Apodaca, *id*. at ¶ 26; that Chavez and Apodaca were close and spent "an inordinate amount of time" together at Gonzales, *id*. at ¶ 36; that staff often saw boy students waiting outside the nurse's office and knocking on a locked door when Apodaca was supposed to be in his office, *id*. at ¶ 38; and that there were communications from a parent about abuse that potentially occurred at another SFPS elementary school, *id*. at ¶ 16.

Plaintiff's counsel generally asserts these additional facts will "establish a genuine issue of material fact as to Defendant Chavez's knowledge and notice concerning Apodaca's dangerousness to boys and Plaintiff, including, but not limited to, evidence challenging Defendant Chavez's credibility in her blanket denials." *Doc. 157-1* at 50.

iv.    *Analysis*

The Court finds Plaintiff has neither carried his burden on Chavez's assertion of

qualified immunity nor shown how additional facts would alter the analysis. It was Plaintiff's burden to show Chavez is not entitled to qualified immunity. *Roska*, 437 F.3d at 971; *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."). Plaintiff has cited no case law showing that the failure of a school administrator to take action under similar facts violates clearly established law. This failure, in and of itself, would be sufficient reason to grant qualified immunity. *See Gutierrez*, 841 F.3d at 901–03.

Likewise, under Rule 56(d), it was Plaintiff's burden to "demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion." *Id.* at 908 (quoting *Lewis*, 903 F.2d at 754). Plaintiff asserts that Chavez's knowledge is relevant to the claims, but presents no specific argument about how the requested information would show a clearly established violation of his constitutional rights. *See id.* at 909 (qualified immunity was properly granted where, "although Plaintiffs' requested information is broadly relevant to the qualified immunity issue, their Rule 56(d) motion did not explain *how* specific information was *essential* to their summary judgment opposition") (emphasis in original). Accordingly, although Plaintiff identifies a number of specific facts to be established through discovery and links them generally to the subject matter of his constitutional claims, he has not "demonstrate[ed] 'how such discovery will raise a genuine fact issue as to the [defendant's] qualified immunity claim.'" *Martin*, 626 F.

App'x at 740 (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1387 (10th Cir. 1994)).

Even viewing the available record and the probable facts in the light most favorable to Plaintiff, the Court cannot find that Plaintiff has successfully shown—or could successfully show, with additional discovery—that Chavez violated his clearly established constitutional rights. At most, the facts Plaintiff proposes to obtain through discovery show that Chavez should have inferred a risk of sexual abuse, i.e., that she was negligent. But merely negligent conduct does not support a constitutional claim, *see Jojola*, 55 F.3d at 490, and it is certainly insufficient to overcome an assertion of qualified immunity. Plaintiff's probable facts would not establish that anyone observed or had knowledge of Apodaca abusing children while at Gonzales, nor would they establish that Chavez was aware of the same. *C.f. Murrell*, 186 F.3d at 1244, 1250–51 (principal and teachers were not entitled to qualified immunity where they refused to investigate or impose discipline despite knowing another student had sexually assaulted the plaintiff, and they told the plaintiff to "forget it had happened"); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994) (principal had the requisite knowledge of a teacher's abuse where another employee had described an incident she witnessed as "child molestation," and there had been reports the teacher was "directing his inappropriate sexual behavior specifically toward" the plaintiff). In short, the identified probable facts would not support a finding of Chavez's "deliberate indifference," *Murrell*, 186 F.3d at 1250, or "conscious disregard," *Rost*, 511 F.3d at 1126,

and would therefore not create a genuine issue as to her qualified immunity claim.

Accordingly, as to Count II, Plaintiff's Rule 56(d) request is denied. Because Plaintiff has plainly stated he cannot rebut Chavez's assertion of qualified immunity, *doc. 157* at 11, the Court finds that further briefing would be unproductive[6] and grants summary judgment in Chavez's favor, based on qualified immunity, for all claims in Count II.

B. <u>Count VI</u>

Chavez also moves for summary judgment on Count VI, which asserts a tort claim under NMSA § 41-4-6, known as the "building waiver." The statute waives immunity for

> damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

*Id*. § 41-4-6(A). The waiver "is not limited to injuries resulting from a physical defect on the premises." *Encinas v. Whitener Law Firm, P.A.*, 310 P.3d 611, 616 (N.M. 2013). Plaintiff alleges Chavez failed to exercise reasonable care in the "maintenance and operation" of Gonzales because she failed to adopt or implement proper safety policies

---

[6] So finding, the Court considers the length of time already given Plaintiff to respond to Chavez's motion and prepare a declaration. Plaintiff's response to Chavez's motion was originally due February 6, 2025, and the Court entered an Order to Show Cause after neither the response nor a request for extension was timely filed. *Doc. 133*. On March 5, 2025, Plaintiff filed an unopposed motion for extension of time to respond. *Doc. 135*. This was granted and the response was not filed until April 7, 2025. *Docs. 139, 157*. In short, Plaintiff has already had more than two months—as opposed to the usual two weeks—to develop legal and factual arguments in his response.

to protect students from abuse, failed to investigate or act on suspicions or reports of abuse, and failed "to properly screen, hire, train, monitor, supervise, and discipline" Apodaca.  *Doc. 82* at ¶¶ 375, 381–82, 387.

Chavez argues she is entitled to summary judgment because Plaintiff cannot demonstrate she "knew or should have known of an alleged dangerous condition." *Doc. 127* at 24.  On the available record, Plaintiff concedes that this is true.  *Doc. 157* at 11.  However, the Court finds that the probable facts identified in counsel's declaration, if supported by evidence, could create a genuine issue of material fact with respect to Chavez's knowledge.  In particular, Plaintiff has identified probable facts that Chavez knew he and other boys spent too much time in the nurse's office with Apodaca; that she was aware Apodaca had been found in the nurse's office with the door locked and a boy inside; that she was aware Plaintiff regularly left school in Apodaca's car; and that there were complaints about Apodaca's excessive closeness with boys, including boys sitting on his lap.  *Doc. 157-1* at ¶¶ 16, 19, 20–21, 28, 30, 32.  These are facts which, if shown, could lead a reasonable factfinder to conclude Chavez should have suspected the danger Apodaca posed to Gonzales students, and should have investigated or taken other action.  *See*, *e.g.*, *I.G. v. Bd. of Educ. of the Aztec Mun. Sch. Dist.*, 2018 U.S. Dist. LEXIS 168710, at *67 (D.N.M. Sept. 30, 2018) ("failing to supervise, reprimand, discipline, or terminate teachers who openly exhibit a pattern of inappropriate boundary-crossing in regard to students," including taking students off campus during

school hours and detaining them after school, "does not accord with the duty to operate a school in a safe, reasonable, and prudent manner"); *c.f. Kreutzer v. Aldo Leopold High Sch.*, 409 P.3d 930, 944 (N.M. Ct. App. 2017) (finding no waiver under § 41-4-6(A) where one student attacked another because, inter alia, "Plaintiffs did not adduce competent evidence . . . that ALHS knew or should have known that [the student] had a propensity for violence"); *Smith v. New Mexico*, 2020 U.S. Dist. LEXIS 212458, at *19 (D.N.M. Nov. 13, 2020) (finding no waiver because there was no allegation that the attacker had "a known reputation for engaging in sexual misconduct" or had "ever engaged in prior improper behavior of any kind"). In short, Plaintiff has identified facts which, if established, could raise a genuine issue that Chavez was aware of a "dangerous condition" on the premises and failed to exercise reasonable care. *See T.R. v. Howard*, 2023 U.S. Dist. LEXIS 198309, at *61–62 (D.N.M. Nov. 3, 2023) ("Plaintiff must be able to establish that Defendant LCPS should have known that Defendant Howard was a 'dangerous condition.'").

The Court is unpersuaded by Chavez's argument that § 41-4-6(A) does not apply because Apodaca's presence did not pose a risk "to the general public or a general class of users." *Doc. 127* at 25. It is certainly true under New Mexico law that, "when negligence creates an unsafe condition for a single individual, the building waiver is inapplicable . . . the dangerous condition must pose a risk to the general population or a class of persons." *Sanders v. N.M. Corr. Dep't*, 562 P.3d 572, 587 (N.M. 2024). However,

16

the class of users may be quite narrowly defined.  *See, e.g.*, *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1265 (N.M. 2006) (finding § 41-4-6 applied where a student with asthma died during physical education class because "[t]he school's failures, if proven, created a dangerous condition for all special-needs children").  Both the allegations of the complaint and the record on summary judgment show that Plaintiff was not the only minor male student abused by Apodaca.  On the available record and the facts identified by counsel's declaration, it appears that Apodaca's presence posed a significant risk to all students at Gonzales, and particularly to minor boys.[7]

In light of the applicable negligence standard, as well as the Court's increased discretion outside the context of qualified immunity, the Court finds that Plaintiff has shown a need for additional discovery under Rule 56(d) on Count VI.  The Court will therefore deny Chavez's motion without prejudice as it pertains to Count VI and permit additional, limited discovery.

## V.    Archdiocese Defendants

The only remaining claim against the Archdiocese Defendants is Count VIII, which asserts a negligent failure "to adequately screen, hire, supervise, place and retain Apodaca."  *Doc. 82* at ¶ 400.  Plaintiff alleges that while he worked as a summer

---

[7] Chavez cites *Sh.A. v. Tucumcari Mun. Sch.*, 2002 U.S. Dist. LEXIS 30091, at *25–26 (D.N.M. Apr. 19, 2002), for the proposition that a teacher's abuse of "certain male students in some of his classes" does not constitute a risk to the general public under § 41-4-6(A).  Indeed, the *Sh.A.* court expressed some doubt that even "the entire student body" would be sufficiently broad as a class to satisfy the waiver.  *Id.* at *26. With the benefit of two additional decades of New Mexico case law, the undersigned disagrees with this interpretation and finds that a risk to male students at a particular school is sufficient to trigger liability.

employee at Santo Niño, Apodaca was his supervisor. *Id*. at ¶ 205. He alleges that on one occasion, Apodaca drove Plaintiff to Albuquerque for a CPR certification required as part of Plaintiff's job responsibilities, and sexually abused Plaintiff in the car "by rubbing his shoulders, caressing his thighs and touching his private areas." *Id*. at ¶ 206–07. He further alleges that Apodaca regularly took Plaintiff to lunch during work hours and would grope and molest Plaintiff in the car during those trips. *Id*. at ¶ 208.

The Archdiocese Defendants argue for summary judgment on two bases: (1) that Plaintiff's claim is barred by the exclusivity provision of the New Mexico Workers' Compensation Act (WCA), and (2) that it is unsupported by evidence because the Archdiocese Defendants had no knowledge of the risk.

A.   <u>WCA Exclusivity</u>

The Archdiocese Defendants contend the claims in Count VIII are barred by the exclusivity provision of the WCA, NMSA § 52-1-9, because the alleged injuries occurred while Plaintiff was an employee of Santo Niño. The WCA precludes other claims "only if the injury falls within the scope of the WCA." *Coates v. Wal-Mart Stores, Inc.*, 976 P.2d 999, 1004 (N.M. 1999). The relevant provision states:

> The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:
>       A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

NMSA § 52-1-9.  The WCA "provides the exclusive remedy for workplace injuries" where these conditions are met.  *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1211 (10th Cir. 2006).

Defendants submit evidence, in the form of Certificates of Insurance for July 1, 2019, through July 1, 2021, that they complied with the relevant insurance provisions.[8] *See doc. 131-11.*  Therefore, subpart (A) of § 52-1-9 is satisfied.

However, based on the facts provided, the Court cannot find as a matter of law that the requirements of subparts (B) and (C) of § 52-1-9 have been met.  The New Mexico Supreme Court has held categorically that "injuries caused by sexual harassment do not arise out of employment."  *Coates*, 976 P.2d at 1006.  In *Coates*, the plaintiffs alleged ongoing sexual harassment by a coworker that included grabbing a plaintiff's breasts from behind, pulling the other plaintiff's blouse open to look at her breasts, and making obscene suggestions and gestures.  *Id.* at 1002.  The court refused, for public policy reasons, to "adopt a rationale that would categorize sexual harassment

---

[8] Plaintiff's counsel contends he does not "have any information" as to the "authenticity, accuracy, or any other number of factors" of these documents, but asserts no argument or probable facts to suggest otherwise.  *Doc. 150-1* at 15.

as an accident." *Id*. at 1005.  It reasoned:

> Sexual harassment is not an accident but rather is a form of
> discrimination, which as a matter of public policy is not accepted in
> society.  Employers must be responsible for maintaining a workplace free
> from sexual harassment.

*Id*.  Therefore, as a matter of law, the exclusivity provision did not bar the plaintiff's tort

claims.  *Id*.

The Archdiocese Defendants point to the earlier-decided *Sabella v. Manor Care,

Inc.*, where the plaintiff was allowed to go forward with both a WCA claim "for the

physical and psychological injuries that she suffered as a result of the sexual assault by

her supervisor," *and* a claim under the New Mexico Human Rights Act (NMHRA) that

the employer "sexually discriminated against her by failing to take action against her

supervisor."  915 P.2d 901, 906 (N.M. 1996).  The court reasoned the "concerns

addressed by the NMHRA are quite different from those addressed by the WCA":

whereas the NMHRA was enacted to eliminate unlawful discriminatory practices, the

WCA was enacted "as a response to the ever-increasing number of industrial injuries."

*Id*. at 905–06.  Therefore, though noting that the damage caused by each claim might

"overlap or coincide," the court held the plaintiff's claim of sex discrimination was not

barred by the WCA.  *Id*. at 906.

The distinction between a "sexual assault" claim, which according to *Manor Care*

may be covered by the WCA, and a "sexual harassment claim," which may not, is

somewhat elusive.  The Tenth Circuit applied the rule of *Manor Care* in one case as

follows:

> What distinguishes injuries arising from sexual assault from claims arising
> from sex discrimination, is that "the essence of the [former] is personal
> injury," which is the peculiar type of injury covered by the WCA.  In the
> present case, Fuerschbach seeks recovery for psychological injury
> stemming from assault, battery, false imprisonment, false arrest and
> intentional infliction of emotional distress.  This is similar to the
> psychological injury resulting from sexual assault in *Manor Care*, and
> distinguishable from non-personal injuries such as sex discrimination,
> retaliation, and intentional spoliation of evidence.

*Fuerschbach*, 439 F.3d at 1214 (quoting *Manor Care*, 915 P.2d at 905–06).  The facts of

*Fuerschbach* did not involve sexual abuse; the plaintiff was the victim of a workplace

prank involving a false arrest.  *Id*. at 1201.  Moreover, the opinion did not include a

discussion of *Coates*' public policy rationale.

Conversely, in another case, the Tenth Circuit rejected an argument that the

WCA was the exclusive remedy for the plaintiff's negligent retention and supervision

claim "because the injuries arose from intentional acts related to sexual harassment."

*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1099 n.4 (10th Cir. 2005) (citing *Coates*, 976

P.2d at 1005–06; *Delgado v. Phelps Dodge Chino*, 34 P.3d 1148, 1153 (N.M. 2001)).  The

court upheld the jury's determination that an employer knew or should have known of

a coworker's "propensity to assault or batter employees" after hearing reports that, inter

alia, he had pulled open the plaintiff's shirt to expose her chest and bra, and then pulled

open her pants to expose her underwear.  *Id*. at 1099.

A court in this district reached the same conclusion in a workplace sexual harassment case, rejecting the defendants' argument that the plaintiff's state law claims were barred by § 52-1-9.  *Macaw v. Ironmonger*, 2004 U.S. Dist. LEXIS 34159, at *5 (D.N.M. Mar. 24, 2004).  The plaintiff was allegedly subjected to a co-employee's "lewd and offensive language, inappropriate touching and posting of lewd and offensive photos."  *Id*. at *2.  She brought, inter alia, a negligent retention claim against her employer and assault and battery claims against a supervisor.  *Id*. at *1.  The court discussed *Manor Care*, then explained that in *Coates*,

> the New Mexico Supreme Court held that "injuries caused by sexual harassment do not arise out of employment."  Thus, the WCA's exclusivity[] provision, NMSA § 52-1-9 is not applicable to claims of sexual assault and battery, negligent retention or supervision, and intentional infliction of emotional distress.

*Id.* at *5.

Having reviewed and considered the relevant case law, the Court finds that the facts of *Coates* and *Chavez* are most analogous to Plaintiff's negligent hiring, retention, and supervision claim against the Archdiocese Defendants.  The facts are also reasonably analogous to those in *Manor Care*, where the plaintiff's claim that her employer failed to take action against her sexually harassing supervisor was not barred from going forward.  From this the undersigned concludes that the Archdiocese Defendants' alleged negligence in hiring, retaining, and supervising Apodaca is more

similar to the "non-personal" injuries described in *Feurschbach* than to the "personal injury" the WCA was meant to cover. *See Fuerschbach*, 439 F.3d at 1214. The Court therefore finds, as in *Macaw*, that workplace sexual abuse of the kind alleged in this case—to include inappropriate and unwelcome touching—is not covered by the WCA and is not barred by its exclusivity provision.

For an additional reason, the Court cannot find that Apodaca's abuse "[arose] out of and in the course of his employment" as required by the WCA. *See* NMSA § 52-1-9(C). "To establish that an injury arises out of employment, it is not sufficient that the injury occurs at work; the disability must have resulted from a risk incident to the work itself or increased by the circumstances of the employment."[9] *Cox. v. Chino Mines/Phelps Dodge*, 850 P.2d 1038, 1040 (N.M. Ct. App. 1993) (quotation and citation omitted). In *Cox*, the claimant's workers' compensation claim "fail[ed] because sexual harassment was not a regular incident of the employment and Employer had specific policies in place prohibiting sexual harassment." *Id*. at 1041; *c.f. Fuerschbach*, 439 F.3d at 1212 ("The record clearly demonstrates that horseplay, in the form of pranks, was a regular incident of employment at Southwest."). There is no evidence that sexual abuse was a regular incident of employment at Santo Niño's summer camp, and as discussed above,

---

[9] Plaintiff's Rule 56(d) declaration includes as probable facts to be discovered that Plaintiff's work arrangements—including the exact hours, agreement as to transportation, and precise responsibilities—will show that the travel during which Apodaca abused him was not part of his employment with Santo Niño. *Doc. 150-1* at 9. Because the Court finds on other grounds that Plaintiff's claim is not barred by the exclusivity provision, it does not reach this more fact-specific question.

it is doubtful as a matter of public policy that New Mexico courts would accept

pedophilia as a risk incident to employment.  *See Coates*, 976 P.2d at 1005.

For these reasons, the Court finds that § 52-1-9 does not bar Plaintiff's tort claims.

B. <u>Lack of Evidence</u>

Finally, the Archdiocese Defendants argue there is no evidence from which a

reasonable jury could conclude they were negligent in hiring, supervising, or retaining

Apodaca.  *Doc. 131* at 8.  They adduce evidence that Apodaca possessed a valid, state-

issued "Level Two Pre K-12 School Health Assistance License" at the time of hiring; that

a criminal background search revealed no information to suggest he posed a risk; that

Apodaca's references were uniformly positive; and that a New Mexico Children, Youth

and Families Department (CYFD) background check confirmed his eligibility to provide

care.  *Id*. at 5, Undisputed Material Facts 3–5.  The Archdiocese Defendants also present

as an undisputed fact that Chavez, who served as principal of Santo Niño during

Plaintiff's summer employment, "neither observed nor was told of Apodaca engaging in

inappropriate behavior of any kind."  *Id*. at 4, Undisputed Material Fact 2.  For this

proposition they rely on Chavez's Affidavit, *doc. 127-1*, previously discussed in

reference to her own summary judgment motion.

"The proper standard for determining whether an employer should be held

liable for negligent supervision or retention of an employee is . . . whether the employer

knew or reasonably should have known that some harm might be caused by the acts or

omissions of the employee who is entrusted with such position." *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 73 (N.M. 2004) (quoting *Los Ranchitos v. Tierra Grande*, 861 P.2d 263, 269 (N.M. Ct. App. 1993)).  Plaintiff concedes he cannot dispute the Archdiocese Defendants' facts or motion on the available evidence, but identifies several probable facts related to Chavez's knowledge in his Rule 56(d) declaration.  For example: that Chavez was aware of a report that Apodaca was locked in a dark room with a young boy; that Apodaca was often seen with boys on his lap at school, and that Chavez was aware of the same; and that there were concerns about certain boys visiting the nurse's office too frequently.[10]  *Doc. 150-1* at 5–8.  These facts, if shown, could create a genuine issue of fact regarding whether Chavez knew or reasonably should have known the risk posed by Apodaca.  As the Archdiocese Defendants have identified, at the time of Apodaca's hiring, "the only individual connected to the Archdiocese Defendants alleged to have prior knowledge of Apodaca was Robin Chavez."[11]  *Doc. 131* at 9–10. Chavez's knowledge of the risk posed by Apodaca is therefore critical to the summary

---

[10] The Court has reviewed the exhibits attached to the Archdiocese Defendants' reply, *doc. 163*, which contain excerpts from the deposition transcripts on which Plaintiff's Rule 56(d) request is largely based. However, Rule 56(d) does not require an evidentiary showing, and the Court will not preemptively deny relief because it appears from this additional evidence that Plaintiff may not be able to develop the probable facts identified in counsel's declaration.  The exhibits will be properly considered after the additional discovery period has concluded.

[11] Plaintiff also correctly notes that Chavez's affidavit "disavow[s] any knowledge of issues with Apodaca *while she was at SFPS*," but does not "provide testimony as to any time thereafter."  *Doc. 150* at 2 (emphasis in original).  However, Plaintiff does not proffer any probable facts to show that Chavez learned incriminating information about Apodaca after she left Gonzales.

judgment analysis.

Accordingly, for the same reasons discussed above with respect to Count VI and Chavez's motion, the Court finds Plaintiff should be granted limited additional discovery under Rule 56(d) before summary judgment is entered.

## VI.    Conclusion

For the foregoing reasons, Defendant Chavez's Motion for Summary Judgment (*doc. 127*) is GRANTED as to Count II, and DENIED WITHOUT PREJUDICE as to Count VI, to be refiled after the parties have engaged in additional discovery.  Plaintiff's request for Rule 56(d) relief (*doc. 157*) is GRANTED IN PART.

The Archdiocese Defendants' Motion for Summary Judgment on Count VIII (*doc. 131*) is DENIED WITHOUT PREJUDICE to be refiled after the parties have engaged in additional discovery.  Plaintiff's request for Rule 56(d) relief (*doc. 150*) is GRANTED.

Plaintiff's additional discovery is strictly limited to the topic of Chavez's knowledge of Apodaca's conduct and to depositions of the individuals listed in Plaintiff's Rule 56(d) declarations.  The additional discovery period is limited to 60 days from the date of this Order.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**